# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| SUZANNE SCIBEK, *individually and on behalf of her minor children*, C.S., J.S., E.S., and JACOB SCIBEK, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>LAURA GEE GILBERT and CRACKER BARREL OLD COUNTRY STORE, INC., )<br><br>Defendants. ) | No. 2:20-cv-2638-DCN<br><br>**ORDER** |

The following matter is before the court on plaintiffs Suzanne and Jacob Scibek's (the "Scibeks") motion for sanctions, ECF No. 22. For the reasons set forth below, the court denies the motion for sanctions.

## I. BACKGROUND

This negligence action arises out of a June 13, 2020 collision involving defendant Laura Gee Gilbert's ("Gilbert") vehicle and the Scibek's golf cart. Prior to the collision, Gilbert was working in the retail section of defendant Cracker Barrel Old Country Store, Inc.'s ("Cracker Barrel") Summerville, South Carolina location. According to Cracker Barrel's records and surveillance footage, Gilbert clocked out at 7:43 p.m. and was seen driving away in her vehicle from the Cracker Barrel parking lot at 8:00 p.m. Approximately thirty minutes later, Gilbert's vehicle collided with the Scibek's golf cart in which their children were passengers. Gilbert was arrested for driving under the influence of alcohol and later pled guilty to that charge. The parties dispute whether

1

Gilbert began consuming alcohol while she was working at Cracker Barrel or only after she had clocked out.

The Scibeks filed suit against Gilbert and Cracker Barrel on July 16, 2020, asserting a negligence claim based on respondeat superior and claims of negligent hiring, training, retention, and supervision. About a month after litigation commenced, Mackenzie Day ("Day"), one of Gilbert's co-workers who had worked alongside her that day, decided to come forward with her version of events. Day first relayed her story over a three-way phone call with her former superior, Milinda Anderson ("Anderson"), and Cracker Barrel's counsel on August 14, 2021. Day claims to have observed a "pungent" smell on Gilbert and that Gilbert appeared unsteady. Later, she also claims she attempted to communicate her concern to Anderson and offered to drive Gilbert home, although this account is disputed by Anderson.

The August 14 call was the only time that Day spoke with Cracker Barrel's counsel. On November 10, 2020, Cracker Barrel responded to the Scibeks' interrogatories and requests for production. Interrogatory No. 3 asked Cracker Barrel to identify all employees at Cracker Barrel on the day of the incident, but neither that interrogatory nor the other items requested a summary of the testimony of potential witnesses. ECF 23-8. The parties filed a Joint Local Rule 26.03 Report ("Joint Report") on December 30, 2020. ECF No. 18. Under the second disclosure in response to Local Rule 26.03(A)(2), the parties each provided a response to a request for the names of fact witnesses likely to be called by the party and a brief summary of their expected testimony. ECF No. 18 at 1. From the time that the parties were communicating about

the Joint Report to the time this motion was filed, the Scibeks did not object to Cracker Barrel's disclosures.

According to Day's affidavit, Day felt "terrible for the victims," and Day's father encouraged her to contact the Scibeks' private investigator, Steve Russell ("Russell"), to "tell the truth." ECF No. 22 at 5 (citing ECF No. 22-1, Day Aff. ¶ 9). Day subsequently met with Russell on three occasions, starting on January 12, 2021. During the second meeting, Russell assisted Day in preparing an affidavit, which was executed on January 15, 2021. Among other information, Day's affidavit stated that she "felt intimidated by Milinda [Anderson] and the attorney" when she spoke to them on the phone and "went along with Milinda's account" when she suggested the events occurred a certain way. Day Aff. ¶ 8. After speaking to Day, the Scibeks did not supplement or otherwise revise their responses to the Joint Report. Additionally, the Scibeks failed to respond to Cracker Barrel's interrogatories by the January 22, 2021 deadline, which Cracker Barrel had already extended once before. The Scibeks ultimately responded to Cracker Barrel's first set of interrogatories on March 8, 2021, at which point they provided Cracker Barrel with Day's affidavit. ECF No. 25-3.

The Scibeks filed a motion for sanctions on July 2, 2021. ECF No. 22. Cracker Barrel responded on July 15, 2021. ECF No. 23. The Scibeks replied on July 22, 2021. ECF No. 25. The court held a hearing on the motion on September 13, 2021. As such, this motion is now ripe for review.

## II. STANDARD

The court has the inherent power to impose sanctions on litigants when merited by their conduct. "[T]he inherent power of a court can be invoked even if procedural

3

rules exist which sanction the same conduct" and there is "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanction for . . . bad-faith conduct." Drake v. Ham, 2007 WL 2302575, at *2 (D.S.C. Aug. 9, 2007) (internal quotations and citation omitted). The court's inherent power to sanction includes penalties up to and including outright dismissal of the offending party's claims. Chambers v. Nasco, 501 U.S. 32, 44–45 (1991).

However, the inherent power to issue sanctions "must be exercised with the greatest restraint and caution" because it is not subject to regulation by Congress or the people. United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993). "A court must find bad-faith on the part of the person to be sanctioned before exercising its inherent power." Dash v. Mayweather, 2011 WL 5357894, at *2 (D.S.C. Nov. 7, 2011) (citing Chambers, 501 U.S. at 45–46). Specifically, when considering default judgment, "the range of discretion is more narrow than when a court imposes less severe sanctions." Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995). There is an increased "significance" in warning a party "about the possibility of default before entering such a harsh sanction." Id. Altogether, this means that "the finding of bad faith must be supported by clear and convincing proof." In re Moore, 739 F.3d 724, 730 (5th Cir. 2014).

Apart from the court's "inherent power" to sanction, the court may sanction pursuant to statutory and rule-based sanctioning schemes. See Chambers, 501 U.S. at 46. One such rule-based sanctioning scheme is Federal Rule of Civil Procedure 37. Rule 37(c)(1) provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . unless the failure was substantially justified

4

or is harmless." To determine whether a failure to disclose information is "substantially justified" or "harmless," the court must evaluate: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). The purpose of Rule 37(c)(1) is to "prevent[] surprise and prejudice to the opposing party." Id. at 597. "[T]he district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless." UFP E. Div., Inc. v. Selective Ins. Co. of S.C., 2017 WL 1293446, at *3 (D.S.C. Apr. 6, 2017).

### III.   DISCUSSION

The Scibeks ask the court to impose sanctions on Cracker Barrel and its counsel for alleged witness tampering and discovery abuse. The court addresses each of the Scibek's allegations of misconduct in turn.

**A. Allegations of Witness Tampering**

**1. Counsel for Cracker Barrel**

The Scibeks first strongly imply that counsel for Cracker Barrel engaged in witness tampering.[1] Rule 3.4 of the South Carolina Rules of Professional Conduct provides that "[a] lawyer shall not . . . (f) request a person other than a client to refrain

---

[1] Cracker Barrel's counsel present on the phone call, James D. Smith ("Smith"), continues to represent Cracker Barrel. As the court noted at the hearing, the court is mindful of whether such continued representation presents an impermissible conflict of interest; for example, to the extent Smith may be a necessary witness in this action. Smith responded at the hearing that his representation of Cracker Barrel does not present a conflict because the contents of the phone call were thoroughly discussed on the record during depositions.

5

from voluntarily giving relevant information to another party" if that person is not a relative, employee, or other agent of the client. S.C. R. Pro. Conduct 3.4. The Scibeks fail to put forth sufficient evidence to show that defense counsel violated this rule. Rather, the evidence on record compels the opposite conclusion. The following exchanges occurred during Day's deposition:

> Q: Okay. Can you tell—I mean can you tell me, as we sit here today, anything specifically that you recall me saying to you during that call?
> A: No. I just remember you asking me, you know, the basic questions about what happened that night.
> Q: Sort of like I've done today?
> A: Yes.
> Q: I mean, anything out of the ordinary that you felt like that I did that day was in any way intimidating to you?
> A: No.

ECF No. 23-20, Day Dep. at 77:24–78:10.

> Q: Do you think I wanted to do, I, me, J.D. Smith, wanted to do anything during that call at all other than get your observations of what you recall?
> A: No, but back to Melinda [sic] being on the call, I felt like I couldn't say a lot because we both had two completely different stories.

Id. at 79:17–23.

> Q: Okay. All right. And I want to talk to you a little bit about that in a second. But did I do anything other than just ask you what you recalled and listened to what you said?
> A: Yes.
> Q: That's all I did?
> A: From what I remember, yes.

Id. at 80:1–7.

To support their accusations of witness intimidation, the Scibeks rely on two pieces of evidence. The first is a general statement in Day's affidavit that she "felt intimidated by Milinda [Anderson] and the attorney so I went along with Milinda's account." ECF No. 22 at 8 (citing Day Aff. ¶ 8) (emphasis added). Even setting aside

6

Cracker Barrel's argument that the affidavit was drafted entirely by the Scibeks' private investigator, ECF No. 23 at 16, this statement fails to explain what defense counsel did to intimidate Day and thus does not show witness intimidation. Second, the Scibeks cite Anderson's testimony, when she was asked whether she "instruct[ed] any current or former employees not to speak to others that were investigating what happened." ECF No. 23 at 14. In response, Anderson stated that when she and Day were on the phone with Cracker Barrel counsel, "he [defense counsel] may have said it at that point to her." Id. at 15 (emphasis added). This indefinite statement is not sufficient evidence of wrongdoing, especially in light of Day's own testimony on multiple occasions that defense counsel did nothing more than question Day about her recollection of the events. Day is the only witness who the Scibeks claim was subject to intimidation, and her failure to point to any particular threats or requests to refrain from speaking to the Scibeks is telling.

Finally, at the hearing on the motion, the Scibeks suggested that, at the very least, Cracker Barrel counsel stood by while Anderson intimidated Day on the call. As the court addresses below, there is no clear and convincing evidence that Anderson engaged in witness intimidation on that call either. Even if there were, mere allegations that a party's counsel "was aware or should have been aware of [] inappropriate actions" are not sanctionable absent additional evidence. Harris v. John Hiester Chevrolet of Lillington, 2018 WL 1021330, at *3 (E.D.N.C. Feb. 22, 2018). In sum, the court does not find any reason to sanction defense counsel for his own personal conduct on that phone call.

### 2. Cracker Barrel Employee

The Scibeks also accuse Anderson, the Cracker Barrel employee who Day reported to, of witness tampering. The Scibeks appear to argue that Cracker Barrel should be sanctioned for "design[ing]" a call meant "to pressure or intimidate" Day into giving false testimony. ECF No. 22 at 9. The same bad faith standard applies in determining whether to impose sanctions for the conduct of Cracker Barrel and its agents. See Dash, 2011 WL 5357894, at *2 ("A court must find bad-faith on the part of the person to be sanctioned . . ."). There is no evidence to support a finding of bad faith here either. If Anderson's actions on the phone call were efforts "to prevent the truthful testimony of [Day]," as the Scibeks suggest, ECF No. 22 at 9, one would expect Anderson to have attempted to intimidate Day again on her other calls with Day, see ECF No. 23 at 14 (referencing contact). In any case, there is additional evidence indicating that at most, Day felt that she and Anderson had two different accounts, but she did not feel pressured on that call such that it constituted witness tampering.

Both parties analyze the alleged misconduct under the criminal statute 18 U.S.C. § 1512(b)(1). Section 1512(b)(1) makes it a crime to (1) knowingly (2) use intimidation, threats, or corrupt persuasion or engage in misleading conduct toward another (3) with the intent to influence, delay, or prevent the (4) testimony of that person in an official proceeding. 18 U.S.C. § 1512(b)(1). The court fails to see the propriety of the parties' appeal to § 1512 in the context of the court's sanction determination.[2] In any event, even

---

[2] Other courts have sanctioned witness tampering pursuant to a court's inherent power. See, e.g., Riley v. City of New York, 2015 WL 541346, at *7 (E.D.N.Y. Feb. 10, 2015) ("[C]ourts in this district and others have sanctioned witness tampering pursuant to a court's inherent power.").

8

if the court employed § 1512 in its sanction analysis, the standard to establish witness tampering under § 1512 is high. Witness tampering "requires proof of the same elements as witness tampering by murder, except that the first element instead requires evidence that the defendant intimidated, threatened, or corruptly persuaded the witness." United States v. Tyler, 956 F.3d 116, 123 (3d Cir. 2020) (citing 18 U.S.C. § 1512(b)(3)). To prove witness tampering by murder, the complaining party must show that the opposing party "was motivated by a desire to prevent the communication between any person and law enforcement authorities concerning the commission or possible commission of an offense." Bruce v. Warden Lewisburg USP, 868 F.3d 170, 184 (3d Cir. 2017). Witness tampering by intimidation or threats further requires proof that "a normal, reasonable person to whom the defendant's conduct and language were addressed [] might reasonably be put in fear of violence." United States v. Johnson, 968 F.2d 208, 211 (2d Cir. 1992).

      Here, Day reported that she felt "intimidated" by Anderson and defense counsel during the call. ECF No. 22 at 8. But in her deposition testimony, Anderson testified, "I didn't feel like anything was going to happen to me or my family." ECF No. 23 at 13. There is no other evidence that Anderson believed Cracker Barrel was threatening her or that she would be putting her life at risk if she spoke to the Scibeks' attorneys or investigator. If the Scibeks' argument is that Cracker Barrel intimidated Day into testifying about the incident in an untruthful way during that call with Anderson and defense counsel, such intimidation would not be motivated by a desire to prevent Day from speaking to someone else about the commission of an offense (the corollary here being Day's alleged observation of negligent behavior).

9

To constitute corrupt persuasion—as opposed to ordinary persuasion, which is by itself "innocuous" and "not inherently malign"—the persuasion must "extend to 'persons conscious of wrongdoing'" and who act with "'wrongful, immoral, depraved, or evil' intent." United States v. Edlind, 887 F.3d 166, 173 (4th Cir. 2018) (quoting Arthur Andersen, LLP v. United States, 544 U.S. 696, 703-04 (2005)). The Scibeks have failed to show these requirements of corrupt persuasion. The record reflects that when asked for all the examples where Anderson cut Day off, Day could only point to one in which Anderson provided "a little side comment" about how Gilbert was fine and did not need to be driven home. ECF No. 23 at 12 (citing Day Dep. at 80:19–81:14). Anderson's actions are most fairly viewed as motivated by self-interest; however, they do not appear to enter the realm of "wrongful, immoral, depraved, or evil intent." See Edlind, 887 F.3d at 173. The same is true for Anderson's requests that employees refrain from speaking to investigators. At most, Anderson was attempting to shield herself, but the court finds no conscious wrongdoing absent additional evidence.

Misleading conduct is defined as knowingly making a false statement. 18 U.S.C. § 1513(3)(A). Here, the Scibeks argue that Cracker Barrel lied to Day about her testimony and misled Day to believe that Russell was a "bad guy." ECF No. 22 at 8, 11. This level of deception, even if true, does not rise to the level of witness tampering found in other cases that have imposed sanctions. E.g., Ramirez v. T&H Lemont, Inc., 845 F.3d 772 (7th Cir. 2016) (imposing sanctions where the plaintiff paid witnesses to testify in his favor at a deposition); Kalwasinski v. Ryan, 2007 WL 2743434, at *2 (W.D.N.Y. Sept. 17, 2007) (finding that death threats directed at an opposing party and the witness were sufficiently serious to warrant the sanction of dismissal).

Since the Scibeks' versions of events do not rise to the level of criminal conduct as defined by 18 U.S.C. § 1512—which is the standard for improper witness tampering that both parties have asked to be held to—the court does not find Cracker Barrel's conduct to be egregious or done in bad faith. Therefore, the court finds default judgment unwarranted.

### 3. Other Considerations

The court recognizes that there are some inconsistencies in the witnesses' testimony regarding the phone call at issue. As of the date of the hearing, Cracker Barrel's account of the events was that Anderson injected her own version of the testimony at least once during the call, ECF No. 23 at 12, and that this was consistent with the interactions between Anderson and Day as a former superior and employee, id. at 27. As the Scibeks fairly point out, however, Anderson appears to deny that she injected her own version of the testimony. ECF No. 25 at 6 (citing ECF No. 25-6, Anderson Dep. at 25:22–26:1). Cracker Barrel also "qualifiedly admit[s] that Anderson contacted Day at some point and asked her not to speak to Russell or anyone else." ECF No. 23 at 23. But Anderson claimed that she did not believe she told Day to refrain from speaking to others about what happened. ECF No. 22 at 11 (citing ECF No. 22-7 at 27:15–28:4). Such inconsistencies may indeed raise eyebrows, but ultimately, they are not unheard of in litigation. At bottom, the Scibeks' evidence of tampering consists of testimony that a witness felt intimidated, which is conflicted by her own testimony. In essence, the Scibeks attempt to seize on testimony which benefits its theory of witness tampering and intimidation while declaring conflicting testimony false. See ECF No. 25 at 6. However, absent some other showing of bad faith or other wrongful intent on the

11

part of defense counsel, Anderson, or another Cracker Barrel representative, there is no clear and convincing evidence of wrongdoing that justifies the harsh sanctions the Scibeks are seeking.

Notably, the Scibeks waited six months to file this motion after the alleged tampering. ECF No. 23 at 24. If the Scibeks truly believed that witness tampering was occurring—and that uncovering it might possibly reveal additional witnesses too "scared to come forward," ECF No. 22 at 14, or other phone calls, ECF No. 25 at 5—then they should have acted with expediency to draw the court's attention to it.

Finally, Cracker Barrel raises the assertion that if anyone should be sanctioned for witness tampering, it should be counsel for the Scibeks for abusive questioning of Gilbert during her deposition. ECF No. 23 at 28. Cracker Barrel draws the court's attention to a deposition excerpt in which plaintiffs' counsel questioned Gilbert about Cracker Barrel's involvement and then immediately pivoted to Gilbert's assets under the pretenses that she could lose a lot if she were found 100 percent responsible. ECF No. 23 at 17. If anything, the Scibeks' counsel's questioning of Gilbert illustrates that there are a wide range of strategies employed in questioning witnesses. However, there is no sufficient basis for finding that this conduct rises to the level of witness intimidation, just as there was none for finding Cracker Barrel counsel's interview of Day amounted to intimidation. Indeed, Cracker Barrel does not appear to seriously pursue the argument that counsel for the Scibeks should be sanctioned based on his questioning during Anderson's deposition. Additionally, Gilbert has not filed a motion for sanctions for Scibeks' counsel's conduct, so the court need not consider Gilbert's arguments regarding

the same. Therefore, the court will not penalize the Scibeks' counsel for this line of questioning.

### B. Allegations of Discovery Abuse

The Scibeks next claim that Cracker Barrel failed to disclose or supplement information as required by Federal Rule of Civil Procedure 26(a) and (e), and such failures warrant default judgment under Federal Rule of Civil Procedure 37.[3] They first argue that once Cracker Barrel learned of Day's testimony, Cracker Barrel should have done more to draw the Scibeks' attention to it.

The Scibeks' reasoning is unconvincing. Cracker Barrel identified Day as a witness, both in its response to Scibeks' first set of interrogatories and in the Joint Report. It is true that Rule 37 authorizes sanctions for "something less egregious than total non-responsiveness." C.f. Hathcock, 53 F.3d at 40. But Cracker Barrel's compliance with the disclosure of Day as a fact witness already distinguishes this case from several other cases in which courts have granted Rule 37 sanctions. See, e.g., Basch v. Westinghouse Elec. Corp., 777 F.2d 165, 174-75 (4th Cir. 1985) (affirming sanctions for passing off an expert witness as a fact witness).

The Scibeks argue that in addition to disclosing Day's name, Cracker Barrel should have disclosed a brief summary of what Day told Cracker Barrel she observed. ECF No. 22 at 12–13. Cracker Barrel points out that the Scibeks' Interrogatory No. 3 "did not request a summary of the testimony of potential witnesses." ECF No. 23 at 4.

---

[3] Although it does not factor into the court's ruling, the court notes that the Scibeks' claim of discovery abuse is difficult to square because Scibeks' counsel has not been particularly diligent with discovery. For example, the Scibeks missed the deadline for responding to Cracker Barrel's First Interrogatories.

13

In response, the Scibeks state that it did not use its own interrogatories to ask for that information because the court had already done so under Local Rule 26.03(A)(2). ECF No. 25 at 4.

In reviewing Cracker Barrel's second disclosure under the Joint Report, the court finds it useful to look to both the Scibeks' and Cracker Barrel's disclosures for context. Under Local Rule 26.03(A)(2), the parties were required to provide in the Joint Report the names of fact witnesses likely to be called by the party and a brief summary of their expected testimony. ECF No. 18 at 1. In the Joint Report, Cracker Barrel included a list of thirty-six employees, which included Day, who Cracker Barrel stated "may testify about their observations on the day of the incident." Id. at 2. In response to the same request, the Scibeks listed certain witnesses, not including Day, that were expected to testify "as to the facts and circumstances known." Id. Whenever pretrial orders have requested a list of proposed witnesses along with summaries of anticipated testimony under Federal Rule of Civil Procedure 26(a)(2)(C), courts have "not require[d] undue detail." O'Donnell v. Majors, 2019 WL 3414402, at *1 (W.D. Va. July 29, 2019) (citing Marr v. Abercrombie & Fitch Stores, Inc., 2015 WL 3827326, at *4 (E.D.N.C. June 19, 2015)). In Carter v. Hutto, the Fourth Circuit considered a party's compliance with a pretrial order that required a summary of anticipated testimony and, likewise, found acceptable a statement that witnesses would "testify to what they had observed" during an alleged unconstitutional search. 781 F.2d 1028, 1030 (4th Cir. 1986). The Fourth Circuit also noted that other courts have accepted summaries of testimony even less specific, such as stating that a witness "will testify about everything that is in the complaint." Id. at 1032 (quoting Miles v. Evans, 591 F. Supp. 623 (N.D. Ga. 1984)).

From the time that the parties were communicating about the Joint Report in December 2020 to the time this motion was filed in July 2021, the Scibeks did not object to Cracker Barrel's disclosures. Such a failure to object during the compilation of the Joint Report is not fatal to the Scibeks because, as they argue, they did not have access to nor possess knowledge of Day's testimony at that point in December. But Cracker Barrel argues that the Scibeks then failed to supplement the Joint Report despite asking for Cracker Barrel to be sanctioned for failing to do so. ECF No. 23 at 32. The Scibeks respond that they had nothing to supplement because they identified Day and referenced her affidavit for a description of her expected testimony in its answers to Cracker Barrel's Interrogatory No. 1. ECF No. 25 at 4–5. The Scibeks' response misses the mark. First, the Scibeks complain that Cracker Barrel failed to supplement the Joint Report but fail to hold themselves to the same standard. If the Scibeks truly believed in keeping the Joint Report thorough and complete to avoid abuse of the judicial process, they would have supplemented their own response to name Day as a witness after learning about Day's testimony no later than January 15, 2021 when Day's affidavit was executed. Even though the Scibeks presumably intend to call Day as a witness to testify, they did not update the Joint Report to reflect that fact. Second, the Scibeks' response to the interrogatories is still deficient under the same standard that the Scibeks would hold Cracker Barrel to in their motion. The Scibeks contend that their response to Cracker Barrel's Interrogatory No. 19—requesting the Scibeks' narrative of the events—proves that there was nothing left to supplement, but nothing in that response indicates the narrative is Day's expected testimony. ECF No. 25 at 5. In their Interrogatory No. 19 response, the Scibeks wrote that "Cracker Barrel reacted by fabricating a new story,

15

directing its employees (both former and current) not to cooperate with the family's investigation," but they failed to refer to Day's testimony even though it would seem relevant to that narrative.  ECF No. 23-17 at 8.

Although the Scibeks arguably provided a sufficient response to Cracker Barrel's Interrogatory No. 2 when they wrote "see Affidavit" for Day in response to a request for "either a summary sufficient to inform the other party of the important facts known to or observed . . . [or] a copy of any written or recorded statements," they still failed to provide a summary or narrative in the Joint Report, which the Scibeks argue is required under the local rules.  ECF 25-3 at 2.  The court need not decide at this time whether one or both parties ought to have supplemented the responses because, in any case, the Scibeks cannot have it both ways.  The court will not impose sanctions on Cracker Barrel for failing to supplement the Joint Report or response to interrogatories when the Scibeks have likewise failed to do so.

The Scibeks also argue that a "handful" of the employees disclosed in the response to interrogatories were not in fact working on the day of the incident, and that Cracker Barrel and their attorney only spoke with three of these employees.  But disclosing more witnesses than Cracker Barrel spoke to in response to a discovery request hardly evinces bad faith.  The Scibeks further allege that Cracker Barrel provided a list of thirty-six employees in an effort to "hide" Day's name "in a long list of others, leaving Plaintiffs with an extensive, time-consuming fishing expedition."  ECF No. 22 at 13.  Like the alleged misconduct for witness tampering, there is limited evidence that counsel for Cracker Barrel acted in bad faith to hide evidence in discovery.  If Cracker Barrel had listed 100 or more employees, perhaps that would approach a so-called "fishing

16

expedition," but as it stands, the Scibeks were able to call each of the Cracker Barrel employees, including Day; Day just chose not to return any phone calls at that time. Therefore, the court finds no evidence of discovery abuse that warrants default judgment under Rule 37.

### C. Lesser Sanctions

Both parties state that if the court determines sanctions are appropriate, it must consider four factors to determine what sanctions to impose: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998).

For the same reasons set forth earlier regarding default judgment, the court likewise finds that no lesser sanctions are warranted for Cracker Barrel's conduct. Since the court finds that no sanctions are necessary, it need not engage in the four-factor analysis to determine the severity of sanctions to impose.

Finally, Cracker Barrel draws attention to the seriousness of the Scibeks' allegations in arguing that the court should impose sanctions to deter future accusations that lack merit. ECF No. 23 at 35 n.7. Cracker Barrel points to the time and money spent defending against these allegations. Id. Cracker Barrel therefore suggests that sanctions be imposed against Scibeks' counsel. Id. at 20 n.3, 35 n.7. Upon review of the matter, the court finds that sanctions against the Scibeks are not warranted under Federal Rule of Civil Procedure 11. While the court does not impose sanctions on the Scibeks for filing

this motion under circumstances in which the Scibeks do not have entirely clean hands, the court strongly discourages this practice in the future.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion for sanctions in its entirety.

**AND IT IS SO ORDERED.**

                                          **DAVID C. NORTON**
                                          **UNITED STATES DISTRICT JUDGE**

**October 1, 2021**
**Charleston, South Carolina**