**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| SUZANNE SCIBEK, *individually and on behalf of her minor children*, C.S., J.S., and E.S.; and JACOB SCIBEK, <br><br> Plaintiffs, <br><br> vs. <br><br> LAURA GEE GILBERT and CRACKER BARREL OLD COUNTRY STORE, INC., <br><br> Defendants. | No. 2:20-cv-2638-DCN <br><br> **ORDER** |

The following matter is before the court on defendant Cracker Barrel Old Country Store, Inc.'s ("Cracker Barrel") motion for summary judgment, ECF No. 34. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This negligence action arises out of a June 13, 2020 collision involving defendant Laura Gee Gilbert's ("Gilbert") vehicle and plaintiffs Suzanne and Jacob Scibek's (the Scibeks") golf cart. Prior to the collision, Gilbert had been working in the retail section of Cracker Barrel's Summerville, South Carolina location. According to Cracker Barrel's records and surveillance footage, Gilbert clocked out at 7:43 p.m. and was seen driving away in her vehicle from the Cracker Barrel parking lot at 8:00 p.m. Approximately thirty minutes after that, Gilbert's vehicle collided with the Scibeks' golf cart in which plaintiffs C.S., J.S., and E.S. (the "Scibek children") were passengers. Gilbert was arrested for driving under the influence of alcohol and later pled guilty to that charge. The parties dispute whether Gilbert began consuming alcohol while she was

1

working at Cracker Barrel or only after she had clocked out. Gilbert herself testified that she did not consume any alcohol before coming to work on June 13, did not consume any alcohol while at work, and did not begin consuming alcohol until after she clocked out and left work. ECF No. 34 at 3 (citing ECF No. 34-3, Gilbert Dep. at 97:3–14).

The Scibeks filed suit against Gilbert and Cracker Barrel on July 16, 2020, asserting negligence claims based on respondeat superior and negligent hiring, training, retention, and supervision. ECF No. 1, Compl. After the complaint was filed, Mackenzie Day ("Day")—Gilbert's co-worker who had worked alongside Gilbert on June 13— agreed to speak with her former Cracker Barrel supervisor, Milinda Anderson ("Anderson")[1] and Cracker Barrel's counsel[2] over the phone on August 17, 2020 (the "August Call"). In January 2021, Day also met with the Scibeks' private investigator on several occasions. During these meetings, Day prepared an affidavit in which she disclosed that on the day of the accident, she had observed a "pungent" smell on Gilbert and that Gilbert was acting unsteadily. ECF No. 22 at 1–2. She also claims in her affidavit that she attempted to communicate her concern to Anderson and offered to drive Gilbert home, but Anderson rebuffed her attempts.

On October 15, 2021, Cracker Barrel filed a motion for summary judgment. ECF No. 34. The Scibeks responded in opposition on November 5, 2021, ECF No. 40, and

---

[1] The facts surrounding this call, along with the resulting dispute between the parties, are described in greater detail in the court's order on the Scibeks' motion for sanctions, ECF No. 31.

[2] There is currently a motion styled as a motion for protective order, ECF No. 33, that opposes the Scibeks' designation of Cracker Barrel's counsel as a necessary witness and the Scibeks' request to disqualify him as counsel. The court previously withheld ruling on that motion pending this motion for summary judgment. Since the court grants summary judgment herein, the motion for protective order is therefore moot.

Cracker Barrel replied on November 12, 2021, ECF No. 42. The court held a telephonic hearing on the motion on January 25, 2022. ECF No. 55. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.   DISCUSSION

Cracker Barrel moves for summary judgment on all claims asserted by the Scibeks against Cracker Barrel—Counts Two and Three of the complaint.[3] The court addresses each claim in turn.

### A.  Count Two: Negligence/Gross Negligence

As the primary basis underlying its motion for summary judgment, Cracker Barrel argues that it owed the Scibek children no legally cognizable duty of care. To prevail in a negligence action, a plaintiff must demonstrate that "(1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." Doe v. Marion, 645 S.E.2d 245, 250 (S.C. 2007). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C. 1998). The existence and scope of the duty are questions of law for the courts. Miller v. City of Camden, 451 S.E.2d 401, 403 (S.C. Ct. App. 1994), aff'd as modified, 494 S.E.2d 813 (S.C. 1997); Roe v. Bibby, 763 S.E.2d 645, 648 (S.C. Ct. App. 2014). "If there is no duty, then the defendant in a negligence action is entitled to summary judgment as a matter of law." Hurst v. E. Coast Hockey League, Inc., 637 S.E.2d 560, 562 (S.C. 2006); see also Hopson v. Clary, 468 S.E.2d 305, 307 (S.C. Ct. App. 1996) ("If the evidence as a whole is susceptible to only one reasonable inference, no jury issue is created and [summary judgment] is properly granted.").

---

[3] Count One is a negligence/gross negligence claim against Gilbert.

4

The Scibeks' complaint alleges that "Cracker Barrel is responsible for the acts and/or omissions of their agents, servants and/or employees under the doctrine of respondeat superior." Compl. ¶ 24. The complaint further alleges that under this doctrine, "Cracker Barrel had a duty to ensure that its employees did not drive home while visibly intoxicated." Id. ¶ 26. The Scibeks' response to Cracker Barrel's motion similarly argues that Cracker Barrel owed a duty of reasonable care based on an "employer-employee relationship." ECF No. 40 at 5. Alternatively, the Scibeks argue that even if such a duty did not exist, "Cracker Barrel created a duty to act reasonably when they undertook the affirmative steps surrounding the removal of Ms. Gilbert from their premises." Id. at 4. For ease of reference, the court groups and discusses the Sciberks' various arguments regarding the existence of a duty together where it considers appropriate.

### 1. Employer-Employee Relationship

The court focuses first on the allegation that Cracker Barrel owed a duty to the Scibek children based on its status as Gilbert's employer. In support of this argument, the Scibeks argue that although there is no general duty to control the conduct of another or to warn a third person, South Carolina recognizes an exception "where the defendant has a special relationship to the victim." ECF No. 40 at 5 (citing Doe v. Wal-Mart Stores, Inc., 711 S.E.2d 908, 911–12 (S.C. 2011)). However, the Scibeks flatly ignore the remainder of the South Carolina Supreme Court's explanation of when such a special relationship will be found. "The defendant may have a common law duty to warn potential victims under the 'special relationship' exception when the defendant 'has the ability to monitor, supervise, and control an individual's conduct' and when 'the

5

individual has made a specific threat of harm directed at a specific individual.'" Id. at 912 (citing Marion, 645 S.E.2d at 250) (emphasis added).

For purposes of summary judgment, there is no meaningful dispute that Cracker Barrel had the ability to monitor, supervise, and control Gilbert's conduct. However, the Scibeks have presented no evidence that Gilbert made a specific threat of harm directed at the Scibeks or the Scibek children. Therefore, under the "special relationship" test cited by the Scibeks, Cracker Barrel owed no duty of care.

The Scibeks then pivot to argue that Cracker Barrel is directly liable because a standard of care may be established by a corporation's "own policies and guidelines." ECF No. 40 at 7. In this respect, the Scibeks place the cart before the horse. Cracker Barrel's corporate policy cannot alone establish the existence of a duty; it is merely a source for determining the applicable standard of care. See Madison v. Babock Ctr., Inc., 638 S.E.2d 650, 659 (S.C. 2006) (holding that the "factfinder may consider relevant standards of care from various sources," including "a defendant's own policies and guidelines"). In Madison, a case cited by the Scibeks, the court had already determined that the defendant owed the victim a duty because (1) they shared a "special relationship" and (2) the defendant "voluntarily undertook the duty." Id. at 657. As the court has and will discuss, however, the Scibeks have not established the existence of a duty based on a special relationship or voluntary undertaking. Any discussion of the applicable standard of care established by Cracker Barrel's policies and guidelines goes to the element of breach, but whether Cracker Barrel violated those policies has no bearing on whether they owed a duty. See id. at 656 ("Respondents' position confuses the existence of a duty with standards of care establishing the extent and nature of the duty in a particular case,

standards by which a fact finder may judge whether a duty was breached."). Indeed, the Scibeks' conflation of the elements of duty and breach is implicit in the Scibeks' own argument. See ECF No. 40 at 7 ("Cracker Barrel's decision to call Ms. Gilbert off the floor and direct her to leave in a condition unsafe for driving was a breach of duty according to Cracker Barrel's own policies and procedures.") (emphasis added).

Critically, even if the court were to consider Cracker Barrel's policies as potential evidence of a duty, they would at most speak to a duty owed to its employees—but not to third parties like the Scibek children. Courts applying South Carolina law have specified that a business's failure to follow its own internal policies does not "establish a legal duty to a third-party," even if such policies "could be relevant to [the] issue of failure to exercise due care." See Big Red Box, LLC v. Square, Inc., 2020 WL 465928, at *14 (D.S.C. Jan. 22, 2020) (collecting cases); see also id. (citing Wade v. Chase Bank USA, N.A., 2014 WL 12538883, at *5–6 (D.S.C. Jan. 9, 2014) ("[P]olicy guidelines and contracts to which plaintiff was not a party could not form the basis of a duty to support plaintiff's negligence claim[.]")). Consistent with this principle, the Scibeks present no evidence that there is a corporate policy addressing third parties who might be affected by an employee's intoxication. Instead, the Scibeks can only cite to a deposition of Cracker Barrel's 30(b)(6) deponent, Gary Garrison ("Garrison"), who discussed actions that Cracker Barrel employees could take to assist their fellow employees—such as calling family members or an ambulance. ECF No. 40 at 7 (citing ECF No. 40-4, Garrison Dep. at 38:11–40:9). Ultimately, even when viewing the facts in the light most favorable to them, the Scibeks have presented no germane argument indicating that Cracker Barrel owed the Scibek children a duty based on its status as Gilbert's employer.

### 2. Respondeat Superior

Next, the Scibeks contend that under the doctrine of respondeat superior, Cracker Barrel is still nonetheless liable for the wrongdoings of Gilbert because "the alcohol consumption occurred within the scope of employment." ECF No. 40 at 5. "The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment." James v. Kelly Trucking Co., 661 S.E.2d 329, 330 (S.C. 2008) (citing Sams v. Arthur, 133 S.E. 205, 207–08 (S.C. 1926)). "Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship." Id.

There is no meaningful dispute that when Gilbert collided with the Scibeks' golf cart, she was no longer carrying out Cracker Barrel's business. In lieu of those facts, the Scibeks argue that Gilbert clocked out early "because that is what Cracker Barrel told her to do," and as such, "[t]he reason Ms. Gilbert was on the road at the time and place of this collision is because Cracker Barrel blocked Ms. Day's efforts to take her home." ECF No. 40 at 7–8. These arguments attempt to ascribe liability based on Cracker Barrel's actions, but they fail to speak to whether Gilbert was acting within the scope of her employment during the accident. To the extent that the Scibeks are claiming that Gilbert was acting within the scope of her employment because she was ordered to go home early, the Scibeks present no legal support for that argument. Moreover, to adopt the Scibeks' interpretation of the law would risk blurring the line for when a "principle

retains the right to control the time, manner, and method of employment of the agent." See Roberts v. Case Pro Inc., 2015 WL 4487968, at *3 (D.S.C. July 23, 2015) (quoting 27 Am. Jur. 2d Employment Relationship § 357).  Any effort to distinguish an order to leave a shift early and what is functionally an obligation to return home at the end of a shift rests on unstable ground, and at bottom, courts analyzing South Carolina law have consistently found that employees returning home are no longer working for their employers.  See, e.g., Hoskins v. King, 676 F. Supp. 2d 441, 446 (D.S.C. 2009) (finding that an employee who was involved in a fatal collision while driving a corporate vehicle "was outside the scope of her employment" since "[t]he purpose of her trip was to return home"); McNaughton v. Sims, 147 S.E.2d 631, 632 (S.C. 1966) (finding that accident resulting from employees who "had completed their work" and "were on their way home" could not give rise to liability under the doctrine of respondeat superior).  The Scibeks' argument—premised on Cracker Barrel's alleged contribution to placing the Scibek children in danger—is instead more applicable to their voluntary act or negligent supervision claims.  See Morrow v. Fundamental Long-Term Care Holdings, LLC, 773 S.E.2d 144, 146 (S.C. 2015) (noting that "the theory of vicarious liability is different than the theory of direct corporate liability . . . arising from negligence in actions"); Adams v. 3D Sys., Inc., 2019 WL 8754875, at *7 (D.S.C. Nov. 26, 2019) ("Liability for negligent supervision is not respondeat superior liability for an employee's conduct; rather, a negligent supervision theory rests on an employer's own negligence in breaching a duty to exercise reasonable care to control certain employees.").  As the court will discuss though, those arguments fail as well.

Likewise, the Scibeks have not shown that Gilbert consumed alcohol in the scope of her employment such that Cracker Barrel should be liable as a matter of respondeat superior. The Scibeks' argument, that an employer owes a duty to third parties if the employee consumes alcohol on the employer's premises, relies entirely on law from outside this jurisdiction. See ECF No. 40 at 5 ("Jurisdictions such as, [sic] California, Hawaii, Oregon and Washington, found it sufficient that the alcohol consumption occurred within the scope of employment under the doctrine of respondeat superior." (citing Purton v. Marriott Int'l, Inc., 159 Cal. Rptr. 3d 912, 914 (Cal. Ct. App. 2013)). In Purton, the California Court of Appeal determined that any employer may be found liable under respondeat superior "as long as the proximate cause of the injury (here, alcohol and/or drug consumption) occurred within the scope of employment." Purton, 159 Cal. Rptr. 3d at 914 (emphasis in original). However, the crucial distinction between Purton and this case is that the Scibeks have not shown that Gilbert's alcohol consumption occurred within the scope of her employment. In South Carolina, an act is within the scope of employment if it is "reasonably necessary to accomplish the purpose of h[er] employment" and is done in furtherance of the employer's business. Gathers v. Harris Teeter Supermarket Inc., 317 S.E.2d 748, 753 (S.C. Ct. App. 1984). Gilbert's drinking on the job, if assumed to be true, in no way furthered Cracker Barrel's interests.

This is underscored by at least one case from within this district that determined an employer was not liable to third parties when its employee consumed alcohol on the employer's premises and during work hours. See Hill v. Honey's, Inc., 786 F. Supp. 549, 551 (D.S.C. 1992) (applying South Carolina law to find that there was no direct or vicarious liability for injuries caused by an employee after she drank alcohol at a holiday

party during work hours). In Hill, the court primarily analyzed the employer's liability as that of a social host, but it also found that the employer was not liable in in its employer capacity because the employee was "not acting within the scope of her employment" when she was drinking at the party or driving home afterwards. Id. at 551. Here, Gilbert's supposed decision to drink at work could only have been personally motivated. Accordingly, the court finds that Cracker Barrel did not owe the Scibek children a duty of care under respondeat superior because Gilbert was not acting within the scope of her employment at the time of the accident.

### 3. Duty Created by Voluntary Undertaking

Finally, the Scibeks argue that even if Cracker Barrel had no affirmative duty to act, it voluntarily decided to act and therefore had to reasonably perform "with the aim to prevent harm." ECF No. 40 at 11. "Under the common law, even where there is no duty to act but the defendant voluntarily undertakes the act, the defendant assumes a duty to use due care." Jackson v. Swordfish Invs., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citing Russell v. City of Columbia, 406 S.E.2d 338, 339 (S.C. 1991)). "While the law imposes this duty on a volunteer, the question whether such a duty arises in a given case may depend on the existence of particular facts." Miller v. City of Camden, 494 S.E.2d 813, 815 (S.C. 1997) (citing Carson v. Adgar, 486 S.E.2d 3, 5 (S.C. 1997)).

According to the Scibeks, "Cracker Barrel voluntarily acted by evaluating Ms. Gilbert, making her clock out, blocking a co-employee from getting [her] home safe, and sending her to drive home[,] all with the knowledge or actual notice that Ms. Gilbert was not in any condition to get behind the wheel." ECF No. 40 at 12. For this argument to withstand summary judgment, the court would have to accept that Gilbert did, in fact,

11

consume alcohol while at work. Gilbert testified, in no uncertain terms, that she did not begin consuming any alcohol until after she left Cracker Barrel's premises. Gilbert Dep. at 97:3–14. As Cracker Barrel previously noted, Gilbert provided this testimony despite arguably standing to benefit from a finding that she had begun drinking earlier in the evening. See ECF No. 23 at 3. In response, the Scibeks' argue that "there is more than a scintilla of evidence from which a jury could find that Ms. Gilbert was consuming alcohol while on the job at Cracker Barrel." ECF No. 40 at 6. Specifically, the Scibeks present evidence that no open containers were found in Gilbert's vehicle, that Gilbert did not consume alcohol while driving home, and that Gilbert took work breaks outside the view of the cameras. As perhaps the Scibeks' most persuasive evidence, they also provide testimony from Day that Gilbert returned from her breaks with a "strong pungent smell" and was "acting intoxicated."[4] Day Dep. at 11:18–20, 12:7–9. While Cracker Barrel contends that such evidence is, at best, circumstantial, they at minimum present questions of credibility beyond this court's purview and issues of material fact as to when Gilbert began drinking. As such, the court presumes, for purposes of this motion for summary judgment, that Gilbert began drinking while she was still working at Cracker Barrel.

Nevertheless, the law is clear that no duty from a voluntary undertaking arises even if Gilbert had consumed alcohol at work, and summary judgment is appropriate. In other words, even if Gilbert consumed alcohol during her employment, the Scibeks

---

[4] Day's testimony has been subject to veiled accusations that she changed her testimony between the August Call and the writing of her affidavit, either due to the influence of the Scibeks' investigator who drafted the affidavit on Day's behalf or due to the actions of Cracker Barrel counsel during the August Call. However, the resolution of these issues is immaterial to the instant motion.

would have to establish that a duty to third parties arose when Cracker Barrel sent Gilbert home with the knowledge of that consumption. The court finds no support in the law to reach such a finding. The Scibeks cite two cases as examples of when an actor purportedly assumed a duty by voluntarily taking charge of an intoxicated person. However, the first is an Arizona case that applied Arizona law.[5] See generally Ocotillo W. Joint Venture v. Super. Ct., 844 P.2d 653 (Ariz. Ct. App. 1992) (cited at ECF No. 40 at 12). The second case involved police officers who "preempted individuals already attempting to aid the petitioner's obviously injured and intoxicated decedent, [and therefore,] incurred a duty to follow through and finish what was begun." Russell, 406 S.E.2d at 339 (cited at ECF No. 40 at 12). However, Russell is distinguishable as the issue before the court therein was whether the police officers incurred a duty to the intoxicated decedent. Id. The Scibeks attempt to expand Russell by applying it to third parties who are affected by the intoxicated individual. However, the relationship, if there is one, between an actor and third parties "is far too attenuated to rise to a level of a duty between them." See Big Red Box, 2020 WL 465928, at *13 (quoting Huggins v. Citibank, N.A., 585 S.E.2d 275, 277 (S.C. 2003)); see also Restatement (Second) of Torts § 323 ("One who undertakes, gratuitously or for consideration, to render services to another . . . is subject to liability to the other) (emphasis added). Moreover, while Day testified that she offered to drive Gilbert home and was denied by Anderson, there is no

---

[5] For the same reason, the case submitted by the Scibeks in their supplement to the court, ECF No. 54, is inapposite. See Otis Eng'g Corp. v. Clark, 688 S.W.2d 307 (Tex. 1983). Otis not binding upon this court, and many other jurisdictions have rejected the reasoning therein. See, e.g., Lett v. Collis Foods, Inc., 60 S.W.3d 95, 104 (Tenn. Ct. App. 2001) (collecting cases). Finally, the Texas Supreme Court adopted the "control over a third person" rationale in the employer-employee context, and as the court discusses infra, South Carolina courts have analyzed the notion of "control" differently.

13

evidence that that Anderson or Cracker Barrel otherwise "took control" by purporting to step in and assist Gilbert themselves.

Instead, South Carolina cases that have examined similar arguments have rejected the notion that actors in Cracker Barrel's position voluntarily assume a duty. Adopting the rule from Second Restatement of Torts, the Scibeks argue that "Cracker Barrel took control" of Gilbert. ECF No. 11–12 (citing Restatement (Second) of Torts §§ 319, 321, 324 (denoting a duty for "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others"; and "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately")). However, in Carson v. Adgar, the South Carolina Supreme Court expressly rejected such a narrow view of "tak[ing] charge" or control. 486 S.E.2d 3, 6 (S.C. 1997). Citing both the Second Restatement and Ocotillo, the court agreed that "an intoxicated person is considered helpless." Id. at 5–6. But the court also held that "in order to establish the defendant has 'taken charge of' one who [is] helpless, the plaintiff must show the defendant did more than act, but through affirmative action assumed an obligation or intended to render services for the benefit of another." Id. at 6 (internal quotations and citation omitted). The court in Carson went on to find that the defendant, who left the intoxicated decedent on the shoulder of the highway, did not take charge of the decedent and, therefore, had no duty to the decedent. Id. The court in Carson focused on how, even assuming the decedent was rendered helpless, "there [was] no evidence respondent caused the intoxication." Id. Moreover, "[t]here [was] no suggestion respondent encouraged [the decedent] to drink." Id. The Scibeks have similarly presented no evidence that Cracker

Barrel affirmatively contributed to Gilbert's intoxicated state, regardless of when that state occurred.

For the reasons discussed above, the Scibeks' have not shown that Cracker Barrel owed the Scibeks or their children a duty as a matter of law. As such, the court grants summary judgment as to Count Two, finding that the Scibeks have failed to allege a negligence action because there is no duty arising under any special relationship with Gilbert, under vicarious liability, or based on Cracker Barrel's affirmative acts.

### B. Count Three: Negligent Hiring, Training, Retention, and Supervision

Next, the court considers Cracker Barrel's motion for summary judgment on the Scibeks' claims for negligent hiring, training, retention, and supervision. Cracker Barrel again maintains that it "owed [the Scibeks] no duty of care" such that these claims fail as a matter of law. ECF No. 34 at 7. The Scibeks argue that "Cracker Barrel had a duty to act reasonably under a direct cause of action for negligent supervision." ECF No. 40 at 8. Notably, the Scibeks do not defend their negligent hiring, training, or retention claims against Cracker Barrel's motion for summary judgment. The court briefly addresses these claims for the Scibeks' benefit. However, even assuming the existence of a duty, these claims present no genuine dispute of material fact, and Cracker Barrel is therefore entitled to summary judgment on the same.

#### 1. Negligent Supervision and Training

"An employer can be liable for negligent supervision of an employee when an employee intentionally harms another on the employer's premises and the employer (i) knows or has reason to know that he has the ability to control his employee, and (ii) knows or should know of the necessity and opportunity for exercising such control."

15

Thomas v. City of Mauldin, 2017 WL 4776972, at *6 (D.S.C. Sept. 26, 2017), report and recommendation adopted by 2017 WL 4764814 (D.S.C. Oct. 20, 2017) (cleaned up). "[N]egligent training is merely a specific negligent supervision theory by another name." Holcombe v. Helena Chem. Co., 238 F. Supp. 3d 767, 772 (D.S.C. 2017).

The Scibeks concede that "the harm did not occur on Cracker Barrel's property" but argue instead that "a proximate cause of the harm most certainly did." ECF No. 40 at 10. This is a plain misapplication of the rule. As Cracker Barrel observes, there is no factual allegation or evidence whatsoever that Gilbert intentionally harmed the Scibek children. Moreover, it is undisputed that the harm occurred away from the Cracker Barrel premises. An intentional harm away from the employer's control is a prerequisite for a negligent supervision claim in South Carolina. Therefore, the court need not even reach the questions of whether Cracker Barrel knew it had the ability to control Gilbert and whether it knew of the necessity and opportunity for exercising such control. The court therefore grants summary judgment and dismisses the Scibeks' claims for negligent supervision and training.

### 2. Negligent Hiring and Retention

The Scibeks fail to advance any arguments in their response pertaining to whether Cracker Barrel was negligent in hiring, training, or retaining Gilbert. Even if the court were to consider the merits of these claims, it is evident that they fail as a matter of law. "In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an

unreasonable risk of harm to the public." James, 661 S.E.2d at 330–31 (citing Degenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992)).  In particular, "[n]egligent hiring cases 'generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties.'" Kase v. Ebert, 707 S.E.2d, 456, 459 (S.C. Ct. App. 2011) (quoting Doe v. ATC, Inc., 624 S.E.2d 447, 450 (S.C. Ct. App. 2005)).  Unlike negligence claims based on vicarious liability, "the employer's liability under such [] theor[ies] does not rest on the negligence of another, but on the employer's own negligence." James, 661 S.E.2d at 331.

Here, the Scibeks have failed to show that there is a genuine dispute of any material fact underlying their negligent hiring, training, and retention claims.  There is no factual allegation in the complaint and no evidence before the court that Cracker Barrel knew or should have known that employing Gilbert created an undue risk of harm to the public.  "Without any factual allegations about [Gilbert's] dangerous propensity, there is no information from which the court could reasonably deduce that [Cracker Barrel] knew or should have known about [Gilbert's] dangerous propensities." See Watkins v. Hall, 2017 WL 4810799, at *2 (S.C. Ct. App. July 19, 2017) (unpublished opinion).  Because such knowledge is essential to the Scibeks' negligent hiring and retention claims, summary judgment in Cracker Barrel's favor is warranted.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

_[signature]_

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 9, 2022**
**Charleston, South Carolina**